*1096 OPINION.
Smith:
The question presented by this proceeding is the amount of income, if any, realized by the petitioner from the sale or exchange in 1920 of certain assets of the petitioner for $50,000 cash, which the petitioner was obligated to use and did use in the purchase of 500 shares of the common capital stock of the Inland Coal & Dock Co., an Ohio coloration. In its petition, the taxpayer alleges error on the part of the respondent in adding $50,000 to its gross income and net income for 1920 and alleges that “ said item of $50,000 constituted and represented certain capital stock which had a tangible value and was exchanged for securities of like amount and for securities of no greater par value, and hence the Commissioner of Internal Kevenue erroneously and illegally included said amount in computing the net income of this taxpayer for the calendar year 1920.”
It is the contention of the petitoner that the substance of the transaction in 1920 was an exchange by E. S. Kendrick, Jr., of $50,000 par value of the capital stock of the Kendrick Coal & Dock Co. for 500 shares of the common capital stock of the Inland Coal & Dock Co., and that no profit resulted from the transaction. The respondent alleges that the assets sold by the petitioner corporation cost it nothing, and that they were sold for $50,000 cash; consequently, that a profit of $50,000 was realized from the transaction.
The evidence discloses that the transaction was not simply a sale of assets for cash. Negotiations prior to the sale were that the petitioner should sell some of its assets for $50,000 par value of the stock of the Inland Coal & Dock Co. The attorney for that company required that the transaction go through as a cash transaction. This *1097 was effected by an exchange of checks of $50,000 each. The substance of the transaction was the exchange of certain assets of the petitioner corporation for 500 shares of the common capital stock of the Inland Coal & Dock Co. The question is whether the petitioner derived any income from such exchange. The facts that at the close of 1920 the petitioner corporation paid a stock dividend of 100 per cent, sold 8 shares of its capital stock for $300 cash, and exchanged its certificate for 500 shares of common capital stock of the Inland Coal & Dock Co. for 500 shares of its own stock appear to us to be immaterial. They do not change the fundamental character of the transaction ivhereby the petitioner sold or exchanged certain of its assets for 500 shares of the common stock of the Inland Coal & Dock Co. It is liable to income tax upon the profit, if any, which it realized from such transaction.
The applicable provisions of the Revenue Act of 1918 are sections 202(a) and 202(b), which provide:
Sec. 202. (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property * * * the basis shall be—
* * * * # :¡« #
(2) In the case of property acquired on or after that date [March 1, 1913], the cost thereof; * * *
(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; but when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities or property exchanged.
Considering first the cost to the petitioner of the assets which it turned over to the Inland Coal & Dock Co., the evidence indicates that all of the contracts assigned to that company had been acquired by the petitioner subsequent to January 1, 1920. So far as appears none of the assets sold, except good will, were paid in to the petitioner for shares of stock upon its organization in 1916. The petitioner acquired certain contracts upon its organization, none of which ran for a period of more than one year. These appear to have been the only assets of value turned over to the petitioner corporation in 1916. Kendrick testified that these contracts were worth $50,000 at the date of organization and that earnings in excess of $50,000 were ascribable lo them. These contracts were soon translated into profits and appear upon the balance sheet as surplus at December 31, 1917. They were not capital assets after that date. The business of the Kendrick Coal & Dock Co. had been operated for a period of only *1098 about two months prior to incorporation and there is no evidence that the business had a good will of value at date of incorporation. The profits of the business were ascribable to the personality and capability of Kendrick. But personal qualifications or characteristics of an individual do not constitute good will. Appeal of Providence Mill Supply Co., 2 B. T. A. 791. The only assets turned over to the Inland Coal & Dock Co. in 1920, which may be said to have cost the petitioner anything, were furniture and fixtures, the depreciated cost of which was $2,782.89. The revenue agent’s report indicates that the books of account of the petitioner show that the depreciated cost of furniture and fixtures was charged to profit and loss in 1920, and the evidence indicates that such loss was allowed by the respondent in determining the deficiency for the year 1920. Since the respondent has computed the deficiency for 1920 by allowing the deduction from the gross income of $2,782.89, the depreciated cost of the furniture and fixtures, there is no occasion for taking this item into consideration in determining the profit, if any, realized from the transaction whereby the petitioner parted with certain assets for the 500 shares of common capital stock of the Inland Coal & Dock Co.
On the assumption that the substance of the transaction was an exchange of assets for 500 shares of stock, it is necessary to consider the fair market value of such shares at the date of receipt. The petitioner contends that no value may be ascribed to them for the reason that they were not transferable by Kendrick or by the other stockholders. The evidence indicates, however, that the shares were subscribed and paid for in 1920 at the rate of $100 per share. We think that this fact alone establishes their fair market value at $100 per share in 1920. Whether the transaction be regarded as a sale of assets for $50,000 cash, as contended by the respondent, or an exchange of assets for the 500 shares of stock appears to us, therefore, as immaterial. The same result must be reached in either case. We think that the petitioner realized a profit in 1920 from the transaction of $50,000, or of the difference between that amount and the depreciated cost of the furniture and fixtures.
Judgment will be entered on 16 days’ notice, under Bule 60.
MillikeN not participating.